Gueísn, J.
delivered the opinion of the court.
The bill is filed in this case by the executor of Peter R. Booker, deceased, for a construction of his will.
After having devised to his wife and to each of his children various legacies, the testator says: “Should any of my children die without coming to maturity, or die without issue, either before or after coming of age, or should leave issue, which issue should die before coming of age, in either of these events such portion of my estate so bequeathed to sucli child or children is to be equally divided between my surviving children.”
The principal ground of controversy in this cause is upon the construction of the above recited clause of the will. Henry L. Booker, one of the sons of the testator, married, and died without issue then living, but a child born after his death died a *508 short time thereafter. Henry L. Booher made a will, by which he disposed of the property which had been devised to him in his father’s will. It is insisted by HenryL. Booker’s representatives, that the limitation in Peter R. Booker’s will to his surviving children depends on an indefinite failure of issue, and is therefore too remote to constitute a'good executory devise. To constitute a valid executory devise, the contingency upon which it is to take effect must occur within a life or lives in being and twenty-one years and a fraction of a year after-wards. If then it is limited to take effect upon the failure of issue, that failure must be definite, and certain to happen within the period above mentioned. For if the limitation be upon an indefinite failure of issue — that is, upon the extinction of the whole line of descendants — it is too remote, as tending to the creation of perpetuities, and is therefore void, and the property vests absolutely in the first taker. It becomes therefore a matter of the greatest importance whenever these words, “dying without issue,” are used, to understand what they mean; whether they mean a dying without issue living at the death of the first taker, or whether they mean a general or indefinite failure of issue.
In the case of Forth vs. Chapman, (1 P. Williams, 663,) Lord Chancellor Macclesfield took a distinction between an executo-ry devise of real and personal property; holding, that in the former case, the words “dying without issue” made an estate tail, because the words meant an indefinite failure of issue; but that with respect to personal property which was transient and perishable, the testator could not have intended a general failure of issue, and therefore in regard to that species of property the testator must have meant, without issue at the death of the first taker.
This distinction has been recognized in many subsequent cases. The question, therefore, as to the meaning of these words in the will, is a question of intention; and although an artificial legal sense has been affixed to the words “dying without issue,” so that taken alone they mean an indefinite failure of issue; yet any clause or circumstance in a will which indicates or implies such intention, will confine the sense to a dying without *509 issue then living. Thus controlled, these words have their vulgar meaning; but otherwise, they are to be understood in their legal sense. Thus in the case of Pells vs. Brown, (Cro. Jac. 590,) the K. B. held that the sense of these words was controled by the intention of the testátor, indicated by other words used in connection with them." 'In that case, the testator devised his land to his son T. and his heirs forever, paying to his brother R. 20 pounds when of age; and it T. died without issue living W. his brother, then the devise was to W. and his heirs and assigns, he paying the 20 pounds to R. The court held, that T. took an estate in fee, and not an estate tail; and they relied on the fact, that he was directed to pay the legacy toR. which implied a fee, and because the clause “if he died without issue” was not absolute and indefinite; for the will added, if he died without issue “living-W.” Here the super-added words “living W.” and the direction to pay the legacy to R. were sufficient indications of the intention of the testator, to control the legal sense of the words “die without issue.” Lord Kenyon, in Potter vs. Bradley, (3 Term R. 146,) extols the case of Pells vs. Brown, as the magna charla of this branch of the law. It certainly has never been denied to be law, although some /eminent judges have not fully approved its reasoning.- It is not deemed necessary to enter into an examination of the cases on this subject. The conclusion of Mr. Fearne upon all that had been decided, when he wrote his learned treatise, is, “that though in the limitation of a personal estate, after a dying without issue, those words shall not ex vi termini, and without the concurrence of any other circumstance of intention, signify a dying without issue living, even though the limitation is in the nature of an estate tail by implication only; yet on the other hand they shall not ex vi termini, where there is any other circumstance of intention, import ah indefinite failure "of issue, even though the limitation is in the nature of an express estate tail; but that in either case, if the limitation rests solely upon the usual extent and import of these words, the limitation is too remote, and therefore void, and the whole vests in the first devisee, or legatee; but that in either case the signification of those words may be confined to a dying without issue *510 then living, by any clause or circumstance in the will which can indicate or imply such intention.” 2 Fearne, 260.
Having thus before us, the rule of construction, by which we are to determine the meaning of the words “dying without issue,” we will turn our attention to the clause of the will under discussion.
The testator provides that if any of his children “die without issue, or should leave issue, which issue should die before coming of age, in either of these events such portion of my estate so bequeathed to such child or children is equally to be divided between my surviving children.”
In this clause the testator seems to have specially intended to postpone the limitation to the longest period the law would allow, and to provide that the contingency must happen within the time. The devise is to his children; but if any of them die without issue, or if such issue die before coming of age, then over, &c. Here the contingency must happen within the period of a life in being and twenty-one years after. For if a child die, leaving issue, which issue dies before comingof age, the death of such issue must necessarily be within twenty-one years and nine months of the death of the parent.
Upon a dying without issue, the estate is to be equally divided between the surviving children. These words “surviving children” are very expressive of the testator’s intention. In the event contemplated, the estate bequeathed to such child is to be equally divided between the surviving children. These terms in such juxtaposition show that “child” and “children” are employed in the same sense, to express a like relation to the testator. Besides, the term “children” expresses the immediate offspring of the parent: neither in its vulgar or its legal sense is it expressive of remote descendants: to make it so mean it must be coupled with other expressions which will give to it such a signification. Here there are no such expressions; on the contrary, the entire clause is pregnant with evidence that the term “children” is used in its appropriate sense to signify the immediate offspring of the testator. The contingency, then, is to happen within the life of some of the testator’s children, and is therefore definitely restricted within the time the law allows.
*511 But it is insisted, that Henry L. Booker, the first taker, had an unlimited power of disposition by the will, because the devise vests in its terms a fee simple estate in him; and having such estate, he had the right to dispose of it. No such consequence as is supposed results, from the simple fact that the de-visee took an estate in fee; for one of the peculiarities of an ex-ecutory devise is, that a fee may be limited upon a fee, which in a contingent remainder cannot be done.
It is insisted, that as by the will Albert Booker manifestly has an unlimited power of disposition over the property devised to him, we are to suppose the testator intended to place all his sons in like circumstances, and therefore that he intended Henry, should also have a like power of disposition. No such legal inference can be drawn from the-devise to Albert as the one here insisted on. We cannot tell what motives the testator-may have had in creating a distinction in the estate devised to his sons. If the argument were sound in this case, it would be applicable in any case of a will, where a difference would exist in the devises to the testator’s children; and we should be •called upon to remodel men’s wills, instead of expounding the meaning of the words they have 'employed.
We therefore think, that as it regards Hénry L. Booker, the executory devise is good, and that his brothers and sisters také the estate which was given him in his father’s will.
2. As it regards Albert Booker’s estate, the provisions of the will give him a power of disposition .wholly inconsistent with the limitation over. After giving him a tract of land, and six thousand dollars worth of negroes to be given him on his arriving at the age of twenty-five years, the will proceeds: “And as a means of support and encouragement from the time he arrives at the age of twenty-one years till twenty-five, he is to have one third of the net profits of the plantation, after paying all expenses; and my executors hereinafter named are to keep a force not less than twenty-four average hands. I give, him also on coming of age, one saddle horse, worth $125; and I give him, on coming of age of my youngest child, one of' my tenements, a store and counting room, with one third of the lot on which my houses are situated in Columbia. The property thus given *512 not to be disposed of until he is twenty-five years of age, except by consent of my executors.”
In the concluding clause above quoted, it seems clear that the testator intended to give an absolute power of disposition of the estate after Albert should arrive at twenty-five years of age. When it is said, he is not to dispose of it until he arrived at the age of twenty-five years without the consent of the executors, it is implied that he may dispose of it, with their consent, before he is twenty-five, and that after he arrives at that age he may make such disposition without their consent. We cannot more clearly express our approbation that a thing may be done, than to forbid it except upon the happening of a certain event. All men would understand that upon the event happening, the right to do the thing had been granted. It would have been absurd for the testator to limit the right to dispose of the property unless the executors consent, or unless he arrive at twenty-five years, if he did not intend that upon either of these occurring he might dispose of it. In the case of Jackson vs. Bull, (10 John. R. 19,) the testator devised to his son Moses and to his heirs and assigns forever a lot of land, and then added, that in case his son should die without lawful issue, the property he died possessed of he gave to his son Young.
The Supreme Court of New York decided, that the limitation over by way of executory devise was void, because repugnant to the absolute power of disposal given by the will to Moses, who was thereby enabled to defeat it.
The same principle is decided in the Court of Errors of New York, in Jackson vs. Robins, (16 John. R. 537,) upon a like provision in the will of Lord Stirling.
It is true, in this case the devise is not, as in those cases, to the devisee and his heirs and assigns forever; but the property is devised to his son Albert, and that by our act of 1784 is to be deemed and construed to-be a devise in fee simple, unless by some part of the will it appears that the testator intended to convey an estate of less dignity. Unquestionably, the words used in this will much more strongly express the testator’s intention to give a power of disposition, than do the words in the New York cases, by the devise to heirs and the devise over *513 of the property he died possessed of. The absolute power of disposing of the property devised to Albert being thus'given in the will, the subsequent limitation by way of executory devise is void, and he takes the estate free from the operation thereof. So this court held in the case of Thompson vs. McKissick, (3 Hump. 621,) Davidson vs. Richardson, (10 Yerg. R. 290,) Smith Tvs. Bell, (Mart. & Yerg. 302,) in each of which cases this question was directly decided.
We therefore think the executory -devise, so far as it relates to Albert's portion of the estate, is void; b'ut that it is good as to the bequests to Henry which had-been made in the preceding part of the will. But this limitation does not touch the residuary clause, nor does it apply to the specific legacies subsequently given, except in such cases as the restriction is again repeated in reference to those legacies specially. This is plainly the intention of the testator; for having first given to his wife, and then to each of his children successively, specific legacies of land and negroes, he then adds the'clause in question, in which he provides that if any child should die without issue, the portion “so bequeathed” is.to be equally divided between the surviving children. The words “so bequeathed” relate specially to the bequests that had been made in the preceding clauses of the will, and have no relation to, or influence over subsequent devises.
The subsequent portions of the will and the codicils sufficiently indicate that this was the intention of the testator, if the meaning of the clause in question were less clear and needed such aid.
The testator had a large estate, and he intended to place a portion of it under such restrictions as to provide a sure support for his children, and to protect them from the casualties or mismanagement by which estates are so frequently squandered, and at the same time he did not choose to tie up the whole estate from the free enjoyment and disposition of his legatees.
But the second residuary clause in the will provides, that “after the coming of age of my youngest child, and the allotting to each the portion herein bequeathed, it is my desire that the *514 whole of my estate of what kind soever be equally divided between the whole of my children then living.”
Inasmuch as Henry died before the youngest child came of age, his devisees are excluded from taking any portion of the residuum by the limitation to the children then living.
But in the codicil,.the testator in the third item devises to his son Henry 2000 dollars of his stock in the Union Bank, in discharge of Henry’s claim for work done on the Franklin and Columbia Turnpike road. In the fifth item he gives his sons James and Henry 640 acres of land in Desoto county, Mississippi, and 640 acres in Lafayette county, Mississippi, as compensation for the trouble and responsibility of executing his will.
These bequests are free from the limitations of the will; and as Henry qualified and acted as executor, the devise to him of the 640 acres of land vested on his qualification as executor, and, together with the 2000 dollars of Union Bank stock, was his absolute property at his death, and passes by his will.
The decree must be reversed, and modified as herein indicated.